**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:20-cv-21525-UU

EL NOVILLO RESTAURANT, *et al.*,

    Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, *et al.*,

    Defendants.
_____/

## **ORDER**

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "Motion"). D.E. 24. The Court has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises. For the reasons that follow, the Motion is GRANTED.

**I.    Background**

Unless otherwise indicated, the following facts come from Plaintiffs' First Amended Class Action Complaint [D.E. 20] (the "Amended Complaint") and are accepted as true.

Plaintiffs El Novillo Restaurant d/b/a DJJ Restaurant Corp. ("DJJ") and El Novillo Restaurant d/b/a Triad Restaurant Corp. ("Triad" and, together with DJJ, "Plaintiffs") each own, operate, manage, and control a restaurant by the name of "El Novillo." D.E. 20 ¶¶ 16, 17. On July 1, 2019, Defendants Certain Underwriters at Lloyd's London ("Defendants") issued commercial property insurance policy number 773TA10063 to DJJ and insurance policy number 773TA10064 to Triad (the "Policies"). *Id.* ¶ 19. DJJ's insurance policy describes the insured property as the El Novillo Restaurant located at 15450 New Barn Road in Hialeah, Florida. *Id.* ¶ 40. And Triad's

policy identifies the El Novillo Restaurant located at 6830 Bird Road in Miami, Florida as the insured property. *Id.*

Plaintiffs allege that the Policies are "all-risk" commercial property insurance policies, "which cover loss or damage to the covered premises resulting from all risks other than those expressly excluded." *Id.* ¶ 30. The Policies include "business interruption coverage," which "promises to indemnify the insured for lost income and certain expenses in the event of a business interruption." *Id.* More specifically, each Policy includes a "Business Income (and Extra Expense) Coverage Form," which provides coverage for "Business Income" and "Extra Expense," as well as additional coverage for actions taken by a "Civil Authority." *Id.* ¶¶ 32, 38, 39.

Plaintiffs allege that as a direct result of the global COVID-19 pandemic and certain governmental orders that restricted restaurant operations ostensibly designed to reduce the number of COVID-19 cases, "Plaintiffs could not use their properties as intended." *Id.* ¶ 48. Plaintiffs specifically identify Emergency Order 02-20, issued on March 16, 2020 by Miami-Dade County Mayor Carlos Gimenez, which "restrict[ed] operating times for all restaurants within Miami-Dade County to 6 a.m. to 11 p.m. other than for delivery." *Id.* ¶ 45. Plaintiffs also identify Emergency Order 03-20, issued by Mayor Gimenez on March 17, 2020, which had the effect of "closing all restaurants in Miami-Dade County other than for delivery or takeout." *Id.* ¶ 46. Plaintiffs allege that they have "suffered both direct physical losses and damage to the properties in the form of diminished value, lost business income, a reduction in right of full ownership, and forced physical alterations during a period of restoration." *Id.* ¶ 48.

Plaintiffs assert that Defendants "are denying claims for business income losses and other covered expenses resulting from the measures put in place by the civil authorities to stop the spread of COVID-19." *Id.* ¶ 7. According to Plaintiffs, "Defendants have no intention of providing

coverage" for Plaintiffs' purported business income losses stemming from the COVID-19 pandemic. *Id.* ¶ 50. And Defendants purportedly "have taken the position in this litigation that Plaintiffs' losses are not covered." *Id.*

Plaintiffs filed the Amended Complaint on July 6, 2020, asserting two causes of action of Defendants: Declaratory Judgment (Count I) and Anticipatory Breach of Contract (Count II). Defendants filed the Motion on July 16, 2020, seeking dismissal of the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion is fully briefed and ripe for adjudication.

## II. Legal Standard

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While the Court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's

liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense. *Id.* at 679. A court may dismiss a case with prejudice if the allegations of a complaint, even when taken as true, afford no basis for relief or when amendment would be futile. *E.g.*, *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)); *Chiron Recovery Ctr., LLC v. United Health Servs., Inc.*, 438 F. Supp. 3d 1346, 1356 (S.D. Fla. 2020).

**III.    Analysis**

Florida law places the initial burden on an insured seeking to recover under an all-risk policy of proving that a loss occurred. *See S.O. Beach Corp. v. Great Am. Ins. Co. of New York*, 305 F. Supp. 3d 1359, 1364 (S.D. Fla. 2018), *aff'd*, 791 F. App'x 106 (11th Cir. 2019). At this stage of the litigation, therefore, Plaintiffs must sufficiently allege that their purported losses are covered under the Policies. *See Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, 192 F. Supp. 3d 1287, 1293 (M.D. Fla. 2016). In determining coverage under an insurance policy, a court's inquiry begins with "the plain language of the policy, as bargained for by the parties." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). In other words, "insurance contracts are construed according to their plain meaning." *Garcia v. Federal Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006). If an insurance policy's language is unambiguous, it governs. *Steinberg*, 393 F.3d at 1230. But where "the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous, and must be 'interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'" *Id.* (quoting *Anderson*, 756 So. 2d at 34).

A. The Policies

Under the Business Income (and Extra Expense) Coverage Form, the Policies provide coverage for lost income and certain expenses in the event of a business interruption or suspension. D.E. 24-1, pp. 37–45; D.E. 24-2, pp. 37–45. Relevant here, the Policies provide coverage for "Business Income" and "Extra Expense," as well as additional coverage for actions taken by a "Civil Authority." *Id.* at 37–38. The Business Income Coverage section states, in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at 37. The Extra Expense Coverage section provides coverage for "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss. *Id.* The Civil Authority Additional Coverage section provides:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action taken to enable a civil authority to have unimpeded access to that damaged property.

*Id.* at 38.

Relevant to the above coverage provisions, the Policies define "suspension" as "[t]he slowdown or cessation of your business activities." *Id.* at 45. "Period of restoration" means the period of time that begins "after the time of direct physical loss or damage," and ends on the earlier of "[t]he date when the property at the described premises should be repaired, rebuilt or replaced" or "[t]he date when business is resumed at a new permanent location." *Id*. And "Covered Cause of Loss" is defined as "direct physical loss unless the loss is excluded or limited in this policy." *Id.* at 49. The terms "physical loss," "loss," "damage," and "property damage" are undefined.

B. <u>Business Income and Extra Expense Coverage</u>

Defendants assert that the Amended Complaint should be dismissed because under the Business Income and Extra Expense Coverage sections, the "Policies provide coverage for business income losses only if such losses are the result of 'direct physical loss of or damage to' the Properties," and the Amended Complaint contains no plausible allegations that the insured properties have suffered any such loss or damage. D.E. 24. Defendants contend that "Plaintiffs make conclusory allegations that they have suffered direct physical damage, but the Amended Complaint is devoid of any mention of what physical damage occurred, how the physical damage occurred, and when the physical damage occurred." *Id*. According to Defendants, "none of Plaintiffs' allegations even if taken as true, state a plausible claim that Plaintiffs have suffered a 'direct physical loss or damage' as required to trigger coverage under the Policies." *Id.*

In response, Plaintiffs acknowledge that "direct physical loss of or damage to property" is not defined by the Policies, and they agree that the definition of this term "is critical to determining the scope of the Policies' business income coverage." D.E. 29. But Plaintiffs argue that this term "must be read to include intangible losses" such as "a loss of functionality or intended use." *Id*. Plaintiffs contend that when interpreted "in the context of the entire policy," the Policies "do not

support Defendants' conclusion that 'direct physical loss of or damage to' connotes only structural damage." *Id.*

In each Policy, the term "direct physical loss" first appears in the Policies' definition of "Covered Causes of Loss." As noted above, a "Covered Cause of Loss" is defined as a "direct physical loss unless the loss is excluded or limited in this policy." D.E. 24-1, p. 49; D.E. 24-2, p. 49. Based on this definition, Plaintiffs argue that any loss expressly excluded under the Policies "must also be defined as a 'direct physical loss'" because "there would be no reason to draft a specific exclusion for a category of losses not covered in the first instance." D.E. 29. And according to Plaintiffs, certain policy exclusions "contemplate losses that do not arise from structural or tangible damage to covered property, but instead deprive the insured of the property's intended use." *Id.*

In making this argument, Plaintiffs necessarily rely on the Policies' exclusionary provisions in an effort to establish coverage under the Policies. The Florida Supreme Court, however, has squarely rejected such an approach. In *Siegle v. Progressive Consumers Insurance Co.*, the court recognized that "policy exclusions cannot create coverage where there is no coverage in the first place." 819 So. 2d 732, 740 (citation omitted). The *Siegle* court continued: "This statement of the law is undeniable—the existence or nonexistence of an exclusionary provision in an insurance contract is not at all relevant until it has been concluded that the policy provides coverage for the insured's claimed loss." *Id.* Accordingly, Plaintiffs' reliance on the Policies' exclusionary provisions must be rejected as a means to establish coverage in the first instance.

As an additional basis to establish coverage, Plaintiffs point to the express language of the Business Income Coverage section, which "provides coverage for any 'suspension' of 'operations' caused by 'direct physical loss of **or** damage to' property at the premises described in the

7

Declarations." D.E. 29 (emphasis in original). Plaintiffs argue that the "use of the disjunctive 'or' indicates that a 'loss of' property is distinct from 'damage to' property." *Id*. And because the terms "damage" and "property damage" "certainly include structural damage to property," Plaintiffs contend that the term "direct physical loss" cannot be "limited to mean only structural damage." *Id.*

Further, Plaintiffs assert that "reading the Policies to cover nonstructural losses accords with the common meaning afforded their plain terms." *Id*. Plaintiffs offer dictionary definitions of the words "direct," "physical," and "loss" in an effort to establish that, taken together, "direct physical loss" may mean "an actual loss of possession," or "the loss of something material, as opposed to mental or spiritual." *Id*. As such, Plaintiffs argue that "the loss of a business, or some aspect thereof, and the temporary loss of possession of one's property, real or personal, both qualify as 'direct physical losses.'" *Id.*

Chief Judge Moore had occasion to consider the meaning of "direct physical loss of or damage to" property under a similar commercial insurance policy. *See Mama Jo's, Inc. v. Sparta Insurance Co.*, No. 17-CV-23362, 2018 WL 3412974, at *1 (S.D. Fla. June 11, 2018). In *Mama Jo's*, the plaintiff restaurant sought coverage for a purported loss "in the form of construction debris and dust" from construction roadwork that was performed at the street adjacent to the restaurant. *Id.* The plaintiff argued that "the migration of dust and construction debris from the roadwork adjacent to the restaurant caused damage to the restaurant" and "that this dust and debris constitute[d] 'direct physical loss' to the Property under the Policy." *Id.* at *8.

Judge Moore determined that the term "direct physical loss" contemplates "an *actual change* in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that

repairs be made to make it so." *Id.* at *9 (internal quotation marks and citation omitted) (emphasis added). Judge Moore continued:

> "The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."

*Id.* (quoting Couch on Insurance § 148:46 (3d Ed. West 1998)). Ultimately, Judge Moore concluded that the plaintiffs "cannot recover under the Business Income (And Extra Expense) Coverage because Plaintiff cannot show that there was any suspension of operations caused by 'physical damage.'" *Id.* at *10. Indeed, the restaurant in *Mama Jo's* "remained open every day, customers were always able to access the restaurant, and suppliers were always able to access the restaurant." *Id.*

The Eleventh Circuit recently affirmed the *Mama Jo's* decision. *See Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 880 (11th Cir. 2020). In determining whether coverage existed under the policy at issue, the Eleventh Circuit also addressed the definition of "direct physical loss" and determined that "'direct' and 'physical' modify loss and impose the requirement that the damage be actual." *Id.* at 879 (citing *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 2d 1067, 1069 (Fla. 3d DCA 2017)). The Eleventh Circuit affirmed Judge Moore's order, holding that the plaintiff failed to show that it "suffered a loss which is both direct and physical." *Id.* (internal quotation marks omitted).

Relying on *Mama Jo's*, Magistrate Judge Torres recommended dismissal of a case in which the plaintiff sought to recover insurance benefits for the loss of business income to its restaurant as a result of the COVID-19 pandemic. *See Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615, 2020 WL 5051581, at *1 (S.D. Fla. Aug. 26, 2020). In examining the commercial insurance policy

at issue, Judge Torres found that the complaint failed to state a claim for coverage where the plaintiff "merely claim[ed] that two Florida Emergency Orders closed his indoor dining." *Id.* at *8. Judge Torres determined that those allegations alone "cannot state a claim because the loss must arise to actual damage." *Id.* Notably, Judge Torres compared the allegations in *Mama Jo's* to the allegations in the *Malaube* complaint and explained that the plaintiff in *Mama Jo's* "at least alleged that there was a physical intrusion (i.e. dust and debris) into his restaurant." *Id*. In *Malaube*, on the other hand, the plaintiff failed to state a claim because "the restaurant merely suffered economic loss – not anything tangible, actual, or physical." *Id*. Moreover, Judge Torres explained that the words "repair" and "replace" in the policy's definition of "period of restoration" contemplated "physical damage to the insured premises." *Id.* at *9.

Similarly, Judge Bloom examined whether economic losses caused by a COVID-19 business closure constituted a "direct physical loss" or "physical harm." *See Raymond H. Nahman DDS PA v. Hartford Cas. Ins. Co.*, No. 20-CV-22833, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020). In *Nahman*, the insurance policy at issue included business income, extra expense, and civil authority coverage. *Id.* at *3. Judge Bloom found that there was no coverage under the business income and extra expenses provisions because the complaint "fail[ed] to allege 'direct physical loss of or physical damage to' the property, which is a necessary component of coverage under those provisions." *Id.*

In addition to the two orders referenced above, federal district courts throughout the country have dismissed substantially similar COVID-19-related lawsuits for failing to state a claim for business income coverage. *See, e.g.*, *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, No. 20-CV-1605, 2020 WL 5791583, at *3 (M.D. Fla. Sept. 28, 2020) ("Here, there is no business income coverage and no civil authority coverage because the Amended Complaint fails

to allege facts describing how the Property suffered any actual physical loss or damage. It is also apparent that any amendment would be futile under these circumstances."); *Seifert v. IMT Ins. Co.*, No. 20-1102, 2020 WL 6120002, at *3 (D. Minn. Oct. 16, 2020) (granting motion to dismiss and finding that the plaintiff's claims "fail to fall within the permissible realm of 'direct physical loss,' as he cannot allege facts showing his properties were actually contaminated or damaged by the coronavirus."); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, No. CV 20-3619, 2020 WL 6156584, at *4 (C.D. Cal. Oct. 19, 2020) ("[L]osses from inability to use property do not amount to "direct physical loss of or damage to property" within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration." (quoting *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 20-CV-04418, 2020 WL 5359653, at *4 (C.D. Cal. Sept. 2, 2020)); *Hillcrest Optical, Inc. v. Continental Cas. Co.*, No. 20-CV-275, 2020 WL 6163142, at *9 (S.D. Ala. Oct. 21, 2020) (dismissing plaintiff's complaint with prejudice because plaintiff failed to allege a "direct physical loss of property").

Here, just like in *Malaube* and *Nahman*, the Business Income and Extra Expense Coverage sections require "direct physical loss of or damage to property." D.E. 24-1, p. 37; D.E. 24-2, p. 37. Each section also contemplates a "period of restoration," which, like in *Malaube*, uses the words "repair" and "replace" in its definition. In the Amended Complaint, Plaintiffs allege only (and in an entirely conclusory fashion) that "Plaintiffs . . . have suffered direct physical losses of or damage to their properties due to the suspension of their operations from the global COVID-19 pandemic," and that they "suffered both direct physical losses and damage to the properties in the form of diminished value, lost business income, a reduction in right of full ownership, and forced physical alterations during a period of restoration." D.E. 20 ¶¶ 40, 48. But the Amended Complaint falls short of alleging that Plaintiffs' properties sustained any physical damage. The

11

Court thus finds that Plaintiffs' allegations are insufficient as a matter of law to establish coverage under the Business Income or Extra Expense Coverage sections.

### C. Civil Authority Additional Coverage

As for the Civil Authority Additional Coverage section, Defendants argue that the Amended Complaint "fail[s] to trigger the Policies' civil authority coverage" because Plaintiffs fail to allege "physical loss or damage to property near the insured property," or that "access to the insured property is prohibited because of that damage." D.E. 24. According to Defendants, "the first requirement of the civil authority coverage is that there be direct physical loss that causes damage to property other than the insured property," and the second requirement is that, as a result of that damage, "the civil authority must prohibit access to the insured location because the nearby property damage has created a dangerous condition." *Id.* Defendants contend Plaintiffs fail to allege these elements.

In *Nahmad*, Judge Bloom squarely addressed the coverage issue under a similar Civil Authority Coverage provision and found that the plaintiff failed to allege coverage under that provision. 2020 WL 6392841, at *9. In so finding, Judge Bloom reasoned that the complaint "allege[d] no physical harm to any properties in the immediate area, only suspensions and closures in general due to government orders," and that the complaint failed to "allege that access to the scheduled premises was specifically prohibited by order of a civil authority." *Id.* (internal quotation marks omitted). Judge Bloom explained that merely restricting access to the plaintiffs' business, without completely prohibiting access, "does not trigger coverage under the Policy's Civil Authority provision." *Id.*

Here, similar to the insurance policy in *Nahmad*, the Civil Authority Additional Coverage section requires "action by a civil authority that prohibits access to the described premises," as a

12

Case 1:20-cv-21525-UU   Document 53   Entered on FLSD Docket 12/07/2020   Page 13 of 13

result of "damage to property other than property at the described premises." D.E. 24-1, p. 38; D.E. 24-2, p. 38. In the Amended Complaint, Plaintiffs fail to allege any physical damage to any property in the immediate area. Instead, Plaintiffs generally allege that "[t]he COVID-19 pandemic and the ensuing governmental orders . . . are physically impacting private commercial property in Miami-Dade County." D.E. 20 ¶ 51. Moreover, Plaintiffs do not allege that access to their restaurants was completely prohibited by order of a civil authority. In fact, Plaintiffs expressly allege that Emergency Order 02-20 "restricted operating times for all restaurants within Miami-Dade County to 6 a.m. to 11 p.m. other than for delivery," and that Emergency Order 03-20 had the effect of "closing all restaurants in Miami-Dade County other than for delivery or takeout." D.E. 20 ¶¶ 45, 46. In other words, these orders did not prohibit customer access to Plaintiffs' properties, but merely restricted access to indoor dining, while the restaurants remained open for delivery and takeout. Given these deficiencies, the Court finds that Plaintiffs fail to allege coverage under the Civil Authority Additional Coverage section.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' Amended Complaint is subject to dismissal. Given that Plaintiffs have already had an opportunity to amend their initial complaint, and because the Court finds that any further amendment would be futile, the dismissal is with prejudice. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion (D.E. 24) is GRANTED. Plaintiffs' Amended Complaint is DISMISSED WITH PREJUDICE. It is further

ORDERED AND ADJUDGED that the Clerk of Court SHALL close this case. All future hearings and deadlines are CANCELLED, and all pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers, Miami, Florida, this 7th day of December, 2020.

Copies furnished:
All counsel of record

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

13